**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

GARY GRIFFIN, *aka* G-Money,

                                        Petitioner,

          - v -                                    9:19-CV-155
                                                    (GLS/DJS)
JAMIE LAMANNA

                                        Respondent.

**APPEARANCES:**                    **OF COUNSEL:**

MILLS LAW GROUP PLLC          JASPER L. MILLS, ESQ.
Attorney for Petitioner
99 Pine Street – Suite 204
Albany, New York 12207

HON. LETITIA JAMES            PAUL B. LYONS, ESQ.
Attorney General for the State of New York     Assistant Attorneys General
Attorney for Respondent
28 Liberty Street
New York, New York 10005

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER[1]

        Petitioner Gary Griffin[2] was convicted after trial of the crimes of murder in the

first degree, conspiracy in the second degree, intimidating a victim or witness in the first

degree, tampering with a witness in the first degree, criminal possession of a weapon in

---

[1] This matter was referred to the undersigned for a report-recommendation pursuant to 28 U.S.C. § 636(b) and
N.D.N.Y.L.R. 72.3(c).

[2] Petitioner originally filed the Petition pro se, but has since retained counsel.

the second degree and criminal facilitation in the second degree.  SR. at p. 257.[3]  He was then sentenced to a "controlling term of life in prison without the possibility of parole." *People v. Griffin*, 128 A.D.3d 1218, 1219 (3d Dep't 2015).  Petitioner presently seeks a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  Dkt. No. 1, Pet.  Respondent opposes the Petition.  Dkt. No. 17, Resp.'s Mem. of Law.  Petitioner has also filed a Traverse.  Dkt. No. 27.  For the reasons that follow, this Court recommends that the Petition be **denied**.

## I. BACKGROUND

The Appellate Division summarized the facts of this case as follows:

Defendant, an admitted member of the "Sex, Money, Murder" branch of the Bloods gang, was charged with murder in the first degree as well as other, lesser charges in connection with his involvement in an execution-style murder intended to prevent the victim from testifying in a pending criminal action against another member of the gang. Members of the gang and their associates had threatened the victim's family and had been looking for him when they received word of his nearby location. Defendant and codefendant Trevor Mattis, together with two female associates, then drove to the victim's location. When they arrived, defendant gave Mattis a gun and Mattis shot the victim in the back of the head. Defendant then directed the getaway and disposal of the gun. After a joint trial, at which the two female associates testified on behalf of the People, defendant and Mattis were convicted as charged. County Court then sentenced them each to a controlling term of life in prison without the possibility of parole.

*People v. Griffin*, 128 A.D.3d at 1218-19 (footnote omitted).  The female associates referenced by the Appellate Division are Amanda Miller and Demetria Kelley.  Each testified before the grand jury and at trial.

---

[3] The state court record is contained in two volumes. Dkt. Nos. 19 & 19-1.  With respect to Dkt. No. 19 citations are in the form "SR." followed by a page number.  Dkt. No. 19-1 is the trial transcript and is cited in the form "Tr." followed by the page number assigned by the Court's CM/ECF system.

Following his conviction, Petitioner appealed to the Appellate Division, Third Department. SR. at pp. 648-729, 1806-1858, & 2249-2272. That court affirmed. *People v. Griffin*, 128 A.D.3d 1218. Petitioner sought leave to appeal to the New York Court of Appeals, SR. at pp. 2307-2314 & 2324-2327, which was denied. *People v. Griffin*, 27 N.Y.3d 998 (2016). Following numerous unsuccessful state collateral attacks on the conviction, *see Griffin v. Lamanna*, 2019 WL 569075, at *1 (N.D.N.Y. Feb. 12, 2019), this Petition followed.

## II. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Petitioner bears the burden of proving by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir. 1997); *Rivera v. New York*, 2003 WL 22234697, at *3 (S.D.N.Y. Aug. 28, 2003). A federal court may not grant *habeas* relief to a state prisoner on a claim unless the state court adjudicated the merits of the claim and such adjudication either:

> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Hawkins v. Costello*, 460 F.3d 238, 242 (2d Cir. 2006).

The Second Circuit has summarized the application of the standard of review under AEDPA as follows:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief:  1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled?  2) If so, was the state court's decision "contrary to" that established Supreme Court precedent?  3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams v. Taylor*, 529 U.S. 362 (2000) and *Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).  The standard of review under § 2254(d) is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt."  *Renico v. Lett*, 559 U.S. 766, 773 (2010).  "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

The phrase "clearly established Federal law" refers to "the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  A state court decision is "contrary to" established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by th[e] Court on a question of law or if the state court decides a case differently than th[e] Court has on a set of materially indistinguishable facts."  *Id.* at 413.  A state court decision is an "unreasonable application" of established Supreme Court precedent "if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*  AEDPA also requires that "a determination of a factual issue made by a State

court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001).

### III. DISCUSSION

Petitioner raises several grounds for relief: 1) defects in the grand jury proceedings; 2) prosecutorial misconduct; 3) violation of the Fourth Amendment; and 4) ineffective assistance from trial and appellate counsel. Pet. at pp. 6-46. Respondent seeks dismissal of the Petition on the merits. *See generally* Resp.'s Mem. of Law at pp. 23-72. For the reasons that follow, the Court recommends that the Petition be dismissed.

### A. Certain Claims Are Not Cognizable

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Certain categories of claims, however, simply do not present a basis for relief. For example, "question[s] of state law . . . [are] not subject to federal habeas review." *Freeman v. Kadien*, 684 F.3d 30, 35 (2d Cir. 2012).

"Claims of alleged deficiencies in state grand jury proceedings are not cognizable on federal habeas corpus review." *Hirsh v. McArdle*, 74 F. Supp. 3d 525, 533 (N.D.N.Y. 2015) (citing *Lopez v. Riley*, 865 F.2d 30, 32–33 (2d Cir.1989)). Petitioner contends that prosecutors presented perjured testimony to the grand jury, Pet. at pp. 6-9, but such irregularities are not cognizable in a federal habeas corpus petition.

*Merritt v. Chappius*, 2015 WL 5711961, at *15 (N.D.N.Y. Sept. 29, 2015) (finding claim of presentation of perjured testimony to grand jury not cognizable in a federal habeas corpus petition).  The Second Circuit has held that claims arising from a grand jury proceeding are non-cognizable on habeas review because any alleged prejudice from deficiencies in the grand jury proceedings is cured by a subsequent conviction after trial.  *See Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989) (stating that under *United States v. Mechanik*, 475 U.S. 66 (1986) "claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in a federal court"); *Merritt v. Chappius*, 2015 WL 5711961, at *15 (collecting cases).

Petitioner's third ground for relief alleges that he was arrested without probable cause in violation of the Fourth Amendment.  Pet. at pp. 15-16.  As Petitioner now concedes, Traverse at p. 12, this claim is also not cognizable on federal habeas review. *Crawford v. New York*, 2010 WL 2651654, at *10 (E.D.N.Y. June 28, 2010); *Anderson v. Corcoran*, 2007 WL 1288539, at *2 (S.D.N.Y. May 2, 2007).

Petitioner's Grand Jury[4] and Fourth Amendment claims, therefore, should be dismissed.

---

[4] This includes Plaintiff's related ineffective assistance of counsel claim regarding counsel's failure to seek dismissal of the indictment based on the allegedly perjurious testimony.  *See* Pet. at pp. 17-19.  "Claims based upon trial counsel's alleged ineffectiveness in failing to move to dismiss an indictment are . . . not cognizable in federal habeas proceedings."  *DeVivo v. Superintendent, Auburn Corr. Facility*, 2006 WL 581145, at *13 (N.D.N.Y. Mar. 8, 2006).

## B. Prosecutorial Misconduct

Petitioner claims that the prosecuting attorney engaged in misconduct related to the testimony of the prosecution's gang expert, specifically that the prosecutor permitted that expert to testify falsely about his qualifications. Pet. at pp. 10-14.

Detective Robert Henry testified, among other things, that he was with the Kingston Police Department for approximately 18 years; was assigned to the Ulster Regional Gang Enforcement Narcotics Team ("URGENT") since 2007; had been involved in gathering local gang intelligence and "hundreds" of gang related investigations and arrests; had attended "several schools" in reference to gang identification and gang prevention given by federal and state agencies and private firms; gave a webinar referencing the "Sex, Money, Murder" branch of the Bloods gang, and taught courses in gang intelligence or identification to Ulster County agencies. Tr. at pp. 1071-72 & 1088-90. Lastly, and most importantly to Petitioner's claim, Detective Henry testified that he was an instructor through the Department of Criminal Justice Services and taught gang identification and history. Tr. at p. 1088. After the prosecution asked Detective Henry if he was a DCJS "certified" instructor, Detective Henry said "yes." Tr. at p. 1089.

After trial, Petitioner filed a Freedom of Information Law (FOIL) request with DCJS requesting any information showing that Detective Henry was certified as a training instructor for gang intelligence by the DCJS in 2010 or 2011. SR. at p. 2635. A DCJS representative responded by stating that the DCJS had no records showing that Detective Henry was a DCJS certified instructor. *Id.* Petitioner filed a section 440.10

motion arguing that the prosecutor suborned perjury when he failed to correct Detective Henry's false statement. SR. at p. 2367.  His claim was denied.   SR. at pp. 2672-2673. Petitioner asserts that "[t]he prosecutor should have known that Detective Henry was giving false testimony concerning his qualifications as a certified gang instructor."  Pet. at p. 12.

These facts do not support a claim for prosecutorial misconduct.  "The habeas court's scope of review as to claims of prosecutorial misconduct is quite limited." *Ogletree v. Graham*, 559 F. Supp. 2d 250, 259 (N.D.N.Y. 2008).   "To prevail on a prosecutorial misconduct claim, a habeas petitioner must demonstrate that the prosecutor engaged in 'egregious misconduct.'"   *Williams v. Duncan*, 2007 WL 2177075, at *26 (N.D.N.Y. July 27, 2007) (quoting *Floyd v. Meachum*, 907 F.2d 347, 353 (2d Cir. 1990)).  The question on habeas review is whether the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  "In considering a claim of prosecutorial misconduct, the alleged misconduct must be placed into context and evaluated based upon its severity, the curative measures taken, and the likelihood of conviction absent its occurrence."  *Skervin v. Graham*, 2008 WL 5100297, at *5 (N.D.N.Y. Nov. 26, 2008) (citing *Blissett v. Lefevre*, 924 F.2d 434, 440 (2d Cir. 1991)).

Other than Petitioner's assertion, there has been no showing that the prosecutor knew the statement about Henry's certification was false.  It is well-established that such conclusory statements are insufficient to establish a prosecutorial misconduct

claim. *Guerrero v. United States*, 2017 WL 1435743, at *14 (S.D.N.Y. Apr. 20, 2017); *Singh v. Connolly*, 2012 WL 976046 at *4 (E.D.N.Y. Mar. 22, 2012).

In addition, as the state court reasonably concluded in denying Petitioner's section 440 motion, based on all of Detective Henry's other qualifications in gang related investigations, intelligence, and convictions, Henry's inaccurate statement was "immaterial and harmless." SCR. 2672-73. "Due process is violated only if the [perjured] testimony [is] material and the Court is left with a firm belief that but for the perjured testimony, [Petitioner] would most likely not have been convicted." *Ortega v. Duncan*, 333 F.3d 102, 106 (2d Cir.2003). The testimony to which Petitioner objects did not bear on his guilt in any way. Its admission, therefore, does not raise any question about the legitimacy of the verdict. Instead, the testimony at best would have gone to bolster Henry's potential for being qualified as an expert, which under New York law did not, in any event, depend on the presence of a certification or even specialized training. *Price ex rel. Price v. New York City Hous. Auth.*, 92 N.Y.2d 553, 559 (1998); *Applewhite v. Accuhealth, Inc.*, 81 A.D.3d 94, 113 (1st Dep't 2010) (Saxe, J., concurring in part) ("It is not required in New York that an expert witness possess a particular certification in order to be qualified as an expert as long as the expert had the requisite degree of knowledge to testify as to the tasks at issue.").

Accordingly, this claim presents no basis for habeas relief.

## C. Ineffective Assistance of Counsel

### 1. Trial Counsel

Petitioner contends that his trial counsel was constitutionally ineffective with respect to a number of specific issues. Pet. at pp. 20-36. Having considered each, the Court recommends that Petitioner's arguments present no basis for relief.

"To establish ineffective assistance of counsel 'a defendant must show both deficient performance by counsel and prejudice.'" *Premo v. Moore*, 562 U.S. 115, 121 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)). Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland v. Washington*, 466 U.S. at 689). A person challenging a conviction thus must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. at 687. Establishing prejudice requires Petitioner to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. at 694.

Petitioner objects first to trial counsel's failure to seek dismissal of the charges against him based on the insufficiency of the evidence. Pet. at pp. 20-24. On direct appeal, Petitioner argued that his conviction was against the weight of the evidence.

SR. at pp. 724-725.  In evaluating, and ultimately rejecting that claim, the Appellate Division specifically stated that it was also evaluating the legal sufficiency of the evidence as well. *People v. Griffin*, 128 A.D.3d at 1219 n.3.  Petitioner also raised this specific issue regarding counsel's failure to move with respect to the sufficiency of the evidence on appeal and it was rejected by the Appellate Division.  SR. at pp. 1841-1847: *People v. Griffin*, 128 A.D.3d at 1220.  That court held that the motions Petitioner objected to counsel not making "would have been properly rejected by the County Court in any event."  *Id.* at 1220.

The *Strickland* test imposes a "high bar."  *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). Under the AEDPA, "it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly." *Bell v. Cone*, 535 U.S. 685, 699 (2002) (citing *Williams v. Taylor*, 529 U.S. at 411).  "Rather, [Petitioner] must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner."  *Id.*  On this record, Petitioner cannot make this showing.  Nothing about the Appellate Division's rejection of Petitioner's ineffectiveness claim was unreasonable.  That is especially true given its finding that there was legally sufficient evidence to support the conviction.  Given that finding, as a matter of state law, there was certainly nothing unreasonable about counsel not having sought dismissal.  Nor could Plaintiff have been prejudiced by the failure to do so since the claim lacked merit under state law.  *United States v. Monsalve-Hernandez*, 162 F.3d 1149 (2d Cir. 1998) ("the failure of . . .  counsel to raise the [sufficiency] argument does not constitute ineffective assistance because it had no

merit."); *Hammerstone v. United States*, 1997 WL 217592, at *2 (S.D.N.Y. May 1, 1997) (because the sufficiency of the evidence "claim has no merit, the decision not to raise the claim did not amount to ineffective assistance of counsel.").

Petitioner next claims that counsel was ineffective because he failed to advise Petitioner that it was his choice whether to testify at his trial and instead coerced him to do so. Pet. at pp. 25-28. Petitioner now contends that he never wished to testify and was essentially forced to do so by counsel. *Id.* at pp. 26-27. This claim should be rejected. Petitioner's claim is wholly conclusory and as demonstrated in the state collateral proceedings largely belied by the record that establishes that Petitioner and his counsel discussed whether he should testify at some length. In denying Petitioner's section 440 motion, the trial court found Petitioner's factual claim regarding coercion "implausible." SR. at p. 2674. The trial court went on to hold that the evidence established that Petitioner "ultimately freely and voluntarily testified at trial." *Id.* Petitioner "bears the burden of establishing by clear and convincing evidence that these factual findings were erroneous," *Kulakov v. Superintendent, Great Meadow Corr. Facility*, 2012 WL 5996090, at *4 (N.D.N.Y. Nov. 30, 2012), and on this record he simply has not met that burden since his claim is conclusory. *Stitsky v. United States*, 2018 WL 10741470, at *8 (S.D.N.Y. Oct. 25, 2018) (petitioner's "self-serving statements" about advice given regarding right to testify "are not sufficient to shown a deficiency in representation.").

Third, Petitioner claims that his counsel's failure to object to the qualifications of the prosecution's gang expert was ineffective. Pet. at pp. 29-30. This claim should also be dismissed for several reasons. First, the only issue Petitioner has specifically raised in this Court about Henry's qualifications is the issue of his inaccurate testimony about being a certified trainer. *See* Pet. at pp. 10-14. Petitioner admittedly did not know this testimony was inaccurate until after trial, *id.* at p. 14, and offers no reason to believe that his counsel knew at the time of trial. Counsel could not have been ineffective in not raising an issue about which he was reasonably unaware. Second, counsel for Petitioner's co-defendant conducted a voir dire of Detective Henry and objected to him being qualified as an expert. Tr. at p. 973. The trial court overruled the objection. *Id.* Effective representation did not require Petitioner's counsel to then also object to Henry's qualifications. Moreover, "*Strickland* specifically held that a criminal defendant alleging prejudice must show 'that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Morales v. Greiner*, 273 F. Supp. 2d 236, 249 (E.D.N.Y. 2003) (quoting *Strickland v. Washington*, 466 U.S. at 687); *see also Nix v. Whiteside*, 475 U.S. 157, 184 (1986) (Blackmun, J., concurring) ("The touchstone of a claim of prejudice is an allegation that counsel's behavior did something to deprive the defendant of a fair trial, a trial whose result is reliable.") (internal quotation omitted). Petitioner offers nothing at all to suggest that had his counsel also objected, the trial court's ruling would have been any different. This is especially true given the state court's later finding that the statement at issue was "immaterial and harmless." SR. at p. 2673.

Fourth, Petitioner objects to trial counsel's alleged failure to consult with his own gang expert. Pet. at pp. 31-34. First, the Court notes that the record fails to establish that counsel did not, in fact, consult with an expert witness. Petitioner's conclusory statement in this regard is insufficient. *Benton v. LaClair*, 2015 WL 1003847, at *7 (W.D.N.Y. Mar. 5, 2015). Moreover, Petitioner has not established that there was an expert who could have offered testimony favorable to him. *See Rivers v. Smith*, 2015 WL 8489963, at *18 (E.D.N.Y. Dec. 8, 2015) ("Mere conclusory statements about the testimonial value of uncalled witnesses are insufficient."); *Akwuba v. United States*, 2007 WL 1789010, at *6 (S.D.N.Y. June 20, 2007) ("In the absence of any showing that there exists an expert who would advance the propositions cited by [Petitioner], the Court will not find [Petitioner's] counsel ineffective for failing to call one."). Finally, it is well recognized that "whether or not to hire an expert is the type of strategic choice by counsel that may not be second-guessed on habeas corpus review." *Murden v. Artuz*, 253 F. Supp. 2d 376, 389 (E.D.N.Y. 2001), *aff'd*, 60 F. App'x 344 (2d Cir. 2003); *see also Mills v. Poole*, 2008 WL 2699394, at *26 (W.D.N.Y. June 30, 2008).

Lastly, Petitioner argues that trial counsel was ineffective because he "shifted the burden of proof during his opening statement." Pet. at p. 35. Far from doing so, Petitioner's trial counsel specifically told the jury during his opening "that the responsibility is entirely on the prosecution to prove their case." Tr. at p. 395. That accurately stated the burden and counsel was not ineffective for saying so. Petitioner specifically objects to counsel's statements regarding Petitioner's intent to testify at the

14

trial and his anticipated willingness to be answer any and all questions asked. *Id.* These comments did not speak to the burden of proof in any way. Instead, taken in context, trial counsel was attempting to lay the groundwork for Petitioner's testimony and send a message to the jury that he was innocent or would not be testifying. *See id.* (noting that defendant need not testify). This was a reasonable strategic choice that cannot be the basis for a finding of ineffectiveness. *Hernandez v. Artus*, 2020 WL 2769404, at *13 (E.D.N.Y. May 28, 2020); *see also Morgan v. Protuondo*, 2003 WL 21817596, at *8 (E.D.N.Y. July 16, 2003). Nor can Plaintiff show any prejudice. The trial court repeatedly told the jury that the prosecution bore the burden of proof. *See*, *e.g.*, Tr. at pp. 1298-1300. No reasonable juror would have taken anything different about the burden from trial counsel's comments during the opening statement. *Clanton v. Rivera*, 2008 WL 2839712, at *15 (S.D.N.Y. July 22, 2008), *report and recommendation adopted*, 2010 WL 1685414 (S.D.N.Y. Apr. 22, 2010); *Norwood v. Artis*, 487 F. Supp. 2d 321, 331 (W.D.N.Y. 2007).

### 2. Appellate Counsel

Petitioner also alleges that his appellate counsel was constitutionally ineffective with respect to three particular matters. Pet. at pp. 37-46. The *Strickland* standard discussed above "applies equally to claims of ineffective assistance by appellate counsel." *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001).

Petitioner first objects that counsel was ineffective in failing to argue on appeal that violations of the rule enunciated in *Brady v. Maryland*, 373 U.S. 83 (1963) during grand jury proceedings should have resulted in dismissal of the indictment. Pet. at pp.

37-39.   Specifically, Petitioner objects that prior, inconsistent statements made by Miller and Kelley were not provided to the grand jury at the time of their testimony.  *Id.* at pp. 37-38.  This claim lacks merit.  "The government had no obligation to present exculpatory material to a grand jury." *United States v. Regan*, 103 F.3d 1072, 1081 (2d Cir. 1997) (citing *United States v. Williams*, 504 U.S. 36, 51-52 (1992)).  Counsel's failure to raise this issue (and the related issue of trial counsel's purported ineffectiveness in not raising the issue), therefore, in no way prejudiced Petitioner.

Next, Petitioner objects to appellate counsel's failure to argue on appeal that trial counsel was ineffective in failing to seek suppression of photographs taken of Petitioner's tattoos at the time of his allegedly unlawful arrest.  Pet. at pp. 40-42.  Following Petitioner's arrest, he was photographed and there was later testimony that included introduction of photographs of Petitioner's tattoos and which sought to connect them to gang affiliation.  *Id.* at p. 41 (citing Tr. at pp. 446-451).  Plaintiff objects that these photographs were improperly introduced into evidence because he was arrested without probable cause, rendering the photographs improperly obtained.  Pet. at p. 41.  Trial counsel did not raise this issue and Petitioner now contends that his appellate counsel was ineffective by failing to argue that trial counsel's decision not to do so was ineffective.  *Id.* at pp. 41-42.

This is not a ground for relief.  Petitioner raised the issue that he had been arrested without probable cause multiple times.  It was, in fact, presented by *appellate counsel* on his direct appeal, SR. at pp. 710-712, and summarily rejected.  *People v. Griffin*, 128 A.D.3d at 1221.  A claim that counsel was ineffective in not raising the

probable cause issue, therefore, is factually inaccurate and should be rejected. Petitioner than raised the probable cause issue again, specifically citing his tattoo photos, in his second coram nobis proceeding. SR. at pp. 2772-2780. The Appellate Division again summarily rejected the claim. SR. at p. 2825. Because the issue was was clearly presented to the state courts and rejected, Petitioner cannot show that he was prejudiced in any way by the failure to his counsel, trial or appellate, to raise the issue in the specific context of the tattoo photographs. *United States v. Monsalve-Hernandez*, 162 F.3d 1149; *Hammerstone v. United States*, 1997 WL 217592, at *2

Finally, Petitioner argues that appellate counsel was ineffective in failing to argue that trial counsel's lack of objections during the prosecution's summation constituted ineffective assistance of counsel. Pet. at pp. 43-46. Petitioner cites numerous purportedly objectionable statements made by the prosecutor. *Id.* The failure to make the desired objections did not amount to ineffective assistance.

"An important part of trial strategy is deciding when objections are likely to be productive and when they are not." *Glover v. Kirk*, 2020 WL 10316986, at *5 (E.D.N.Y. Apr. 20, 2020). In the context of a summation, defense counsel may make a strategic decision not to object to comments "so as not to draw the jury's attention to them." *Reid v. Giambruno*, 2007 WL 3232497, at *25 (W.D.N.Y. Oct. 31, 2007) (citing cases). Strategic choices "are virtually unchallengeable." *Strickland v. Washington*, 466 U.S. at 690. Having reviewed the record in detail the Court finds that the lack of objections may well been such a strategic choice in light of the evidence against

Petitioner and his defense at trial. Such choices should not be second-guessed many years after the fact.

Nor, when taken individually, do the particular comments now cited by Petitioner demonstrate a basis for finding his counsel ineffective.

Petitioner claims the prosecutor impermissibly appealed to prejudice in the community by suggesting that Petitioner's gang posed a threat to the community where the matter was being tried. Pet. at p. 43. While a prosecutor may not make statements designed solely to appeal to a jury's passions or to suggest that the jury has reason to fear the defendant, *United States v. Barlin*, 686 F.2d 81, 93 (2d Cir.1982), this case involved significant evidence about gangs and the role individuals of different ranks in gangs play. Defendants sought during their closings to minimize the importance of evidence regarding gang membership, *see* Tr. at pp. 1370 & 1394-1396, and so the prosecutor's comment about the dangers of gangs was fair comment aimed at addressing defense arguments. *Adams v. Artus*, 2012 WL 1077451, at *8 (E.D.N.Y. Feb. 24, 2012), *report and recommendation adopted*, 2012 WL 1078343 (E.D.N.Y. Mar. 30, 2012). Moreover, the comment was an isolated one that can hardly be said to have prejudiced Petitioner. *See Cunningham v. Bennett*, 2005 WL 1162475, at *7 (E.D.N.Y. May 16, 2005).

Second, Petitioner claims the prosecutor improperly referred to evidence outside the record when he referred to two overt acts with respect to an alleged conspiracy despite only one such act being charged in the indictment. Pet. at p. 43. The prosecutor, in making this comment specifically told the jury that only one overt act was charged

in the indictment.  Tr. at p. 1254.  The trial court judge reiterated that during instructions.  Tr. at pp. 1326-1330.  Given that, Petitioner can show no prejudice from the comment, even assuming it was improper.

Third, Petitioner objects to the improperly vouching for two witnesses.  Pet. at pp. 43-44.  "Vouching, under New York law, refers to the prosecutor acting as an unsworn witness in order to tie his own credibility to that of the witness."  *Rodriguez v. Brown*, 2011 WL 4073748, at *6 (E.D.N.Y. Sept. 13, 2011) (citing *People v. Moye*, 12 N.Y.3d 743, 744 (2009)).  Petitioner's claim relates to comments the prosecutor made about the leniency offered to Miller and Kelley.  Pet. at p. 44 (citing Tr. at pp. 1268-1269).  Those remarks did not seek to tie the prosecutor's credibility to that of the witnesses, instead it urged jurors to listen to their testimony even if they felt they should not have been afforded deals by the prosecutor.  As a result, trial counsel "did not unreasonably fail to object to improper vouching, since no such vouching occurred."  *Awulye v. United States*, 2020 WL 774093, at *4 (S.D.N.Y. Feb. 18, 2020).  To the extent these comments were otherwise objectionable, objections were lodged by counsel for the co-defendant and sustained by the trial court, Tr. at pp. 14717-1418, so Petitioner cannot show why his counsel also needed to object or how he was prejudiced by the failure to do so.

Fourth, the prosecutor is alleged to have given an improper personal opinion.  Pet. at pp. 44-45.  Generally stated, a prosecutor may not express his or her personal beliefs about the evidence to a jury.  *See U.S. v. Modica*, 663 F.2d 1173, 1178-79 (2d Cir.1981).  However, "[t]he prosecution is permitted to use rhetorical devices and

present the evidence in the record from its point of view." *Levine v. Scully*, 1994 WL 455473 at \*5 (S.D.N.Y. Aug. 22, 1994) (citing *United States v. Bagaric*, 706 F.2d 42, 60 (2d Cir. 1983)).  The examples cited by Petitioner as objectionable clearly fall in the latter, not the former category.  The prosecutor's statements to the jury were comments on the evidence, not a personal opinion about any particular witnesses' veracity. Suggesting, for example, that Petitioner had a motive to lie, Tr. at pp. 1271-1272, is "standard and appropriate." *Readdon v. Senkowski*, 1998 WL 720682, at \*4 (S.D.N.Y. Oct. 13, 1998).  Petitioner also takes issue with the prosecutor commenting about "another very strong piece of proof." Pet. at p. 40 (citing Tr. at p. 1274).  A prosecutor, however, is entitled to comment on his or her view of the strength of the evidence against a defendant. *James v. Artus*, 2005 WL 859245, at \*12 (S.D.N.Y. Apr. 15, 2005). Doing so, absent some form of egregious misconduct, is not objectionable. The other examples highlighted by Petitioner all represent fair comment on the evidence, not improper opinion. *Jackson v. Conway*, 763 F.3d 115, 150 (2d Cir. 2014).

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Petition be **DENIED** and **DISMISSED**; and it is further

**RECOMMENDED**, that no Certificate of Appealability ("COA") be issued because Petitioner has failed to make "a substantial showing of the denial of a constitutional right" as required by 28 U.S.C. § 2253(c)(2);[5] and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such obligations shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:  October 3, 2023
       Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

---

[5] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see also Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that, if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation").